UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JODI ANN WAGNER,

    Plaintiff,

v.                                            Case No: 2:18-cv-285-FtM-UAM

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Jodi Ann Wagner, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.   Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

**A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff filed an application for a period of disability and DIB on December 17, 2014, and an application for SSI on March 30, 2015. (Tr. 249-55, 258-67). Plaintiff's applications were denied initially on June 19, 2015, and upon reconsideration on October 21, 2015. (Tr. 163-70, 173-84). Plaintiff requested a hearing, and, on February 8, 2017, an administrative hearing was held before Administrative Law Judge Maria C. Northington ("the ALJ"). (Tr. 54-94). On May 2, 2017, the ALJ entered a decision finding that Plaintiff was not disabled. (Tr. 31-53). Plaintiff requested review of the ALJ's decision, and, on February 24, 2018, the Appeals Council denied review of the ALJ's decision. (Tr. 1-7). Plaintiff initiated this action by Complaint (Doc. 1) on April 26, 2018.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 26, 2014, the alleged onset date. (Tr. 36). At step two, the ALJ found that Plaintiff had the following severe impairments: bilateral wrist DeQuervain's tenosynovitis, fibromyalgia, and anxiety. (Tr. 36). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 37).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) such that the claimant retains the capacity to perform light work with the ability to occasionally lift and/or carry up to 20 pounds as defined in the regulations as, as well as, lift/carry 10 pounds frequently. This includes sedentary work as defined in the regulations. The claimant has no limits for sitting in an eight-hour workday. She is capable of standing and/or walking for up to six hours in an eight-hour workday. In the course of work, she should be allowed the ability to optionally alternate between sitting and standing about every 30 to 60 minutes, but such would not cause her to be off-task nor would it cause her to leave the workstation. She is able to perform occasional postural functions of climbing ramps/stairs, kneeling, and stooping. She is to perform no crawling, no crouching and no climbing of ladders/ropes/scaffolds. The claimant is to perform no overhead lifting, no overhead carrying and no overhead reaching with the bilateral upper extremities. The claimant is to perform no constant fine bilateral manipulations to include typing and fingering, however, frequent, occasional, and gross manipulations remain intact. She retains the capacity to understand, remember and carry-out non-detailed instructions and perform non-detailed routine tasks as consistent with unskilled work. She is able to respond appropriately to the public, supervisors, coworkers and work situations.

(Tr. 38). At step four, the ALJ found that Plaintiff is unable to perform her past relevant work as a radiologic technologist and home health aide/nurse assistant. (Tr. 44).

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 44). Relying on the testimony of the vocational expert, the ALJ found that Plaintiff could perform such jobs as clerical router, merchandise marker, addressing clerk, and document preparer. (Tr. 45). The ALJ concluded that Plaintiff had not been under a disability from August 26, 2014, the alleged onset date, through May 2, 2017, the date of the ALJ's decision. (Tr. 34-46).

**II.     Analysis**

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by failing to properly weigh the opinion evidence; (2) whether the ALJ erred by relying on VE testimony that conflicted with the Dictionary of Occupational Titles (DOT); and (3) whether remand is necessary because the ALJ was not properly appointed pursuant to the Appointments Clause of the U.S. Constitution when she entered her decision.  The Court will address each issue in turn.

**(a) Whether the ALJ erred by failing to properly weigh the opinion evidence.**

Plaintiff argues that the ALJ erred in numerous ways in weighing the opinion evidence of record. (Doc. 22 p. 18-25).  Plaintiff contends that the opinions of treating physicians Peter Schreiber, D.O., David Baldinger, M.D., and Christopher Yuvienco, M.D., show that Plaintiff is more limited than determined by the ALJ. (Doc. 22 p. 18).  Plaintiff argues that the ALJ incorrectly summarized the findings of Stephen Helgemo, Jr., M.D., and accorded his findings great weight, despite the fact that Dr. Helgemo' findings show Plaintiff is more limited than determined by the ALJ. (Doc. 22 p. 20-21).  Plaintiff argues the ALJ erred by improperly assigning great weight to the opinions of non-examining physicians Glenn Bigsby, D.O., and Keith Bauer, Ph.D. (Doc. 22 p. 22).  Further, Plaintiff argues that the ALJ erred by mischaracterizing Dr. Sudderth's findings and assigning the findings "significant weight." (Doc. 22 p. 22).  In response, Defendant argues that the ALJ properly considered the medical opinions and substantial evidence supports the weight the ALJ accorded the opinions. (Doc. 22 p. 25-31).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986).  The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education,

and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). The RFC is the most a plaintiff is able to do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). In determining whether Plaintiff can return to her past relevant work, the ALJ must determine the Plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004), 20 C.F.R. §404.1520(e).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

In this case, the Court finds that Plaintiff has failed to show that the ALJ erred by improperly weighing the medical evidence. Beginning with the ALJ's analysis of Dr. Schreiber's opinion, the Court notes that the ALJ correctly noted that Dr. Schreiber's conclusion that Plaintiff "remains disabled from gainful employment," is on an issue reserved for the Commissioner. (Tr. 43, 563). Opinions on some issues, such as a claimant's RFC, or whether a claimant is disabled "are **not** medical opinions, . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e. that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). Further, the ALJ

provided good cause for giving little weight to Dr. Schreiber's medical source statement where he identified lifting/carrying, sitting, standing, walking, postural and manipulative limitations that would limit Plaintiff to less than sedentary work. (Tr. 43, 554-57). The ALJ reasoned that Dr. Schreiber's limitations were not supported by Plaintiff's repeated examinations showing normal strength, reflexes, sensation, and no edema. (Tr. 43, 481, 495, 499, 515, 563, 586, 591, 595, 602, 605, 608, 613, 667, 672, 676, 681, 684, 697, 702). Indeed, in support of his opinions, Dr. Schreiber noted Plaintiff had, among other things, "severe" decreased sensation and moderate lower extremity weakness (Tr. 555), which is directly contradicted by his own treatment notes and the treatment notes of other providers. (Tr. 43, 481, 495, 499, 515, 563, 586, 591, 595, 602, 605, 608, 613, 667, 672, 676, 681, 684, 697, 702). *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (providing generally greater weight is given to opinions that are consistent with the record as a whole).

The ALJ identified the same good reasons for giving little weight to the medical source statements at exhibit 16F and by Plaintiff's primary care physician Dr. Yuvienco that limited Plaintiff to less than sedentary work. (Tr. 44, 577-80, 643-46). As with Dr. Schreiber's assessment, these sources likewise cited "severe" decreased sensation and "severe" or "marked" lower extremity weakness (Tr. 579, 644), which are contradicted by the treatment notes repeatedly showing "normal" strength, reflexes, and sensation. (Tr. 44, 481, 495, 499, 515, 563, 586, 591, 595, 602, 605, 608, 613, 667, 672, 676, 681, 684, 697, 702). The ALJ also considered Plaintiff had mild abnormalities on diagnostic testing. (Tr. 44, 456, 683-84, 686-89). Plaintiff's balance and gait were also noted as normal several times in the record, most recently in January 2017 (Tr. 40-42, 481, 549, 654, 726) and no doctor opined she needed an assistive device. (Tr. 549, 557, 580, 646).

The Court notes that Plaintiff argues that the ALJ should have attributed the June 27, 2016 medical source statement with an illegible signature at exhibit 16F to Dr. Baldinger. Reviewing the signature, it is unclear who signed the document and finds no error in the ALJ's failure to attribute this opinion to Dr. Baldinger. In any event, the ALJ specifically considered the opinion and identified good cause for giving little weight to the opinion. (Tr. 44, 577-80). Furthermore, as Defendant notes, Dr. Baldinger remarked in his June 27, 2016 treatment note, that he was assisting Plaintiff fill out disability paperwork supplied by her attorney and that he documented her "**subjective** limitations" on the form. (Tr. 599). The ALJ gave little weight to the opinion because it was not supported by objective findings. (Tr. 44).

Furthermore, the Court finds no reversible error in the ALJ's treatment of the opinions of Dr. Sudderth and Dr. Helgamo. In his opinion, the ALJ cited exhibit 18F containing treatment notes from Dr. Schreiber, stating that she gave significant weight to the exam findings of "Dr. Sudderth" including full motor strength and normal mental status (Tr. 44, 589). The mention of "Dr. Sudderth" appears to be a scrivener's error and likely was intended to state "Dr. Schreiber" given the citation to Dr. Schreiber's notes. (Tr. 44). Further the record the ALJ cites does include examination findings that Plaintiff had full motor strength and a normal mental status. (Tr. 44, 591). Dr. Schreiber's motor strength finding is consistent with the records cited previously in reference to the ALJ's evaluation of Dr. Schreiber's medical source statement, and his mental examination findings of normal memory, insight/judgment, mood/affect, and cognition are likewise consistent with numerous mental status examinations in the record (Tr. 481, 495, 499, 591, 653, 609, 613, 654). Thus, although the ALJ incorrectly referred to Dr. Schreiber as "Dr. Sudderth," given the ALJ's specific citation to Dr. Schreiber's opinion, the Court does not find remand necessary.

Turning to the treatment of Dr. Helgamo's opinion, the ALJ noted that he opined Plaintiff could not engage in lifting or repetitive work with either hand and was limited to light exertional work (Tr. 43, 511, 513). The ALJ then gave his opinion significant weight only to the extent that he limited Plaintiff to light work2 (Tr. 43). While the ALJ did not explain why he discounted Dr. Helgemo's lifting and repetitive use of hands limitation, in the next paragraph the ALJ gave a similar opinion concluding Plaintiff was unable to type, push buttons on her job, or lift more than two to five pounds little weight as it was not consistent with the testing and objective findings on examination, which is sufficient cause for discounting an opinion. (Tr. 43). In her decision, the ALJ noted that in November 2014, Plaintiff showed normal sensation, motor strength and reflexes and EMG and nerve conduction testing in late 2014 showed only mild abnormalities. (Tr. 41, 481, 456). The ALJ also noted that Plaintiff's examination with Dr. Kibria showed only minimally diminished grip strength at 4/5 with "poor effort" (Tr. 42, 549) and that examinations thereafter continued to show intact strength, sensation, and range of motion in all extremities. (Tr. 42, 491, 515, 563, 591, 595, 602, 667, 672, 697). The ALJ further noted Plaintiff was expected to make a full recovery after her wrist surgery in 2015 (Tr. 41) as Dr. Helgemo even stated that his restrictions were not "long term." (Tr. 536).

Finally, the Court finds no error in the ALJ's decision to give significant weight to the opinion of state agency consultants Dr. Bigsby and Dr. Bauer. The ALJ must consider the findings of State agency non-examining physicians and psychological consultants as expert opinion evidence. See 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). State agency medical and psychological consultants are "highly qualified and experts in Social Security disability evaluations." 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). The ALJ considered their opinions and gave them significant weight as they were consistent with the record as a whole, including the

mild to moderate clinical abnormalities and diagnostic testing. (Tr. 43). As discussed previously, examinations repeatedly showed normal strength, reflexes, sensation, and gait. (Tr. 40-42, 44, 481, 495, 499, 515, 549, 563, 586, 591, 595, 602, 605, 608, 613, 654, 667, 672, 676, 681, 684, 697, 702, 726) and diagnostic testing indicated mild abnormalities. (Tr. 44, 456, 683-84, 686-889). The ALJ did not solely rely on the state consultants' assessments but considered them as only one source of evidence in formulating the RFC.

**(b) Whether the ALJ erred by relying on VE testimony that conflicted with the DOT.**

Plaintiff argues that the VE's testimony that a hypothetical individual with Plaintiff's RFC could perform the jobs clerical router, merchandise marker, addressing clerk, and document preparer conflicts with the DOT because these jobs require frequent or constant fine bilateral manipulations to include fingering and/or typing, which the ALJ specifically precluded in the RFC. (Doc. 22 p. 32). Plaintiff contends that this is an apparent conflict that must be resolved on remand. (Doc. 22 p. 32). Plaintiff also argues that the ALJ erred by failing to subpoena documents and sources from the VE concerning the VE's jobs number testimony in violation of the HALLEX. (Doc. 22 p. 32). In response, Plaintiff argues that there was no apparent conflict between the VE's testimony and the DOT and that the VE did not improperly rely on Job Browser Pro software in determining jobs numbers. (Doc. 22 p. 34-37).

Social Securing Ruling 00-4p provides that when there is an "**apparent** unresolved conflict" between VE testimony and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence. SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). In particular, SSR 00-4p imposes a duty on the ALJ to identify "apparent conflicts," ask the VE about them, and explain how the conflict was resolved in the ALJ's decision. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1366 (11th Cir. 2018). An "apparent conflict" is a conflict

that is "reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Washington*, 906 F.3d at 1365.

In this case, Plaintiff has failed to identify an apparent conflict between the VE's testimony and the DOT with regard to the ALJ's fingering and fine manipulation limitations. The ALJ asked the VE to limit the claimant to "no **constant** fine, bilateral manipulations, to include typing and fingering." (Tr. 80). The ALJ, however, specifically stated that "**frequent**, occasional, and gross manipulations **remain intact**." (Tr. 80) (emphasis added). The DOT defines "Constantly" as "activity or condition exists 2/3 or more of the time" and "Frequently" as "activity or condition exists from 1/3 to 2/3 of the time." *See* U.S., Dept.'s of Labor, DOT § 209.587-010, 1991 WL 671797 (addresser), § 209.587-034, 1991 WL 671802 (marker), § 222.587-038, 1991 WL 672123 (router), § 249.587, 1991 WL 672349 (document preparer) (4th ed. 1991). Consistent with the VE's testimony, none of the jobs identified by the VE require constant or more than frequent fine or gross manipulation, such as handling or fingering, and feeling is not present.

Additionally, the Court finds no basis to remand on the grounds that the ALJ failed to comply with the HALLEX regarding Plaintiff's subpoena request. "The [HALLEX] is a policy manual written by the Social Security Administration to provide guidance on procedural matters." *Warren v. Astrue*, 830 F. Supp. 2d 1369, 1372 (S.D. Fla. 2011). "[R]emand is required only if the ALJ violates the procedures in the HALLEX and only if the violation prejudices the claimant." *Cohan v. Comm'r, Soc. Sec. Admin.*, 2011 WL 3319608, at *5 (M.D. Fla., July 29, 2011).

In this case, Plaintiff has failed to show that the alleged HALLEX violation prejudiced Plaintiff concerning jobs numbers. At the hearing, Plaintiff's counsel questioned the VE concerning the source of jobs numbers. The VE identified in detail the methodology he used to determine the numbers. (Tr. 91-92). The VE did not solely rely on Job Browser Pro software to

calculate his numbers but merely compared his calculations to it to see if the numbers were consistent. (Tr. 92). Because Plaintiff has failed to show that the VE's job numbers were unreliable or that his testimony conflicts with the DOT, the affirms the ALJ's reliance on the VE's testimony.

### (c) Whether remand is necessary because the ALJ was not properly appointed pursuant to the Appointments Clause of the U.S. Constitution when she entered her decision.

Relying on the Supreme Court's recent decision *Lucia v. S.E.C.*, ⸺ U.S. ⸺, 138 S.Ct. 2044, ⸺ L.Ed.2d ⸺ (2018), Plaintiff argues that remand is necessary because the ALJ was not validly appointed pursuant to the Appointments Clause of the U.S. Constitution. (Doc. 22 p. 37-38). Plaintiff contends that her constitutional challenge is timely because the SSA does not require claimants to argue an issue to the agency prior to making the argument in court. (Doc. 22 p. 38) citing *Sims v. Apfel*, 530 U.S. 103, 108 (2000). In response, Defendant argues that the Court should deny Plaintiff's argument because it was never presented to the agency in the administrative process. (Doc. 22 p. 39-45).

In *Lucia*, the Supreme Court addressed the issue of whether ALJs of the Securities and Exchange Commission ("SEC") are "Officers of the United States" and, thus, subject to the methods of appointment set forth in the Appointments Clause of the Constitution. In the underlying case, the SEC had instituted an administrative proceeding against the petitioner and charged him with violation of the Investment Advisors Act. 138 S.Ct. at 2049-50. An ALJ adjudicated the case and, after a nine-day hearing, issued an initial decision concluding that the petitioner had violated the Act. *Id*. at 2050. On appeal to the SEC, the petitioner argued that the administrative proceeding was invalid because the ALJ had not been constitutionally appointed pursuant to the Appointments Clause. *Id*. The SEC rejected the petitioner's argument. *Id.* On

appeal to the Court of Appeals for the D.C. Circuit, the ten members of the en banc court divided evenly on the issue, resulting in a per curiam order denying the petitioner's claim. *Id.*

The Supreme Court, noting that ALJs of the SEC hold a continuing office, exercise "significant discretion" when carrying out "important functions," rule on the admissibility of evidence, and have power to enforce compliance with discovery orders, ruled that ALJS of the SEC are "Officers of the United States" and are subject to the Appointments Clause of the Constitution. *Id.* at 2053. In considering the proper remedy for the petitioner, the Supreme Court noted that "'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." *Id.* at 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 182-83, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995)). The Supreme Court determined that the appropriate remedy was a new hearing before a properly appointed official, other than the ALJ who originally decided the case (in the event that the ALJ received a constitutional appointment). *Id.*

In this case, the Court finds that Plaintiff has failed to show remand is appropriate. First, Plaintiff's argument is vague and conclusory, providing no specifics as to how the ALJ came into her position. In *Lucia*, the invalidity of the SEC ALJ's appointment was not in dispute. The Supreme Court noted that all SEC ALJs had been selected by SEC staff members, and not by the Commission proper. *Id.* at 2049. Here, the Court finds no reason to assume, without being shown, that the ALJ was not appointed in compliance with the Appointments Clause.

Even assuming that the ALJ was not appointed in compliance with the Appointments Clause, remand would be inappropriate. Unlike the petitioner in *Lucia* who raised the Appointments Clause challenge before the SEC, Plaintiff did not challenge the validity of the ALJ's appointment at the agency level before the ALJ or the Appeals Council but raised the issue

for the first time before this Court. Because Plaintiff did not raise her Appointments Clause challenge at any point during the administrative proceedings, the Court finds that the issue is waived. *See Abbington v. Berryhill,* 2018 WL 6571208, at *2 (S.D. Ala. Dec. 13, 2018) (listing cases in which district courts have held that Appointment Clause challenges to Social Security ALJs are forfeited when the claimant fails to raise the issue at the administrative level).

The Court rejects Plaintiff's argument that her Appointments Clause challenge is not untimely based on *Sims v. Apfel*, U.S. 103 (2000). The Ninth Circuit has recently rejected a similar argument, explaining that "*Sims* concerned only whether a claimant must present all relevant issues *to the Appeals Council* to preserve them for judicial review; the [Supreme] Court specifically noted that '[w]hether a claimant must exhaust issues before the ALJ is not before us.'" *Shaibi*, 883 F.3d at 1109 (second alteration in original) (quoting *Sims*, 530 U.S. at 107, 120 S.Ct. 2080). Because the issue is whether Plaintiff's challenge is timely being presented to this Court for the first time, *Sims* is not applicable.

Finally, the Court notes that the Supreme Court in *Lucia* did not make a blanket finding that all ALJs are subject to the Appointments Clause, but only that SEC ALJs were so subject. At the time of the Supreme Court's decision, the SEC had only five ALJs. *Lucia*, 138 S.Ct. at 2049. In contrast, there are currently over 1,700 SSA ALJs. *See* ALJ Disposition Data FY 2019, *available at* [https://www.ssa.gov/appeals/DataSets/03_ALJ_Disposition_Data.html]. The SSA conducts hundreds of thousands of hearings and adjudicates hundreds of thousands of disability claims each year. As Defendant notes, the SSA's Annual Performance Report indicates that in the past four fiscal years (FY) (FY 2014-FY 2017), the agency has received between 620,164 (FY 2017) and 810,715 (FY 2014) hearing requests each year and the agency completed more than 652,000 hearings each year during that same period, with a high of 685,657 hearings completed in

FY 2017. *See* Social Security Administration, Annual Performance Report Fiscal Years 2017-2019, at 35. If the courts were to apply *Lucia* to Social Security cases as Plaintiff argues this Court should, millions of cases would need be remanded for rehearing by a different ALJ. Given these important efficiency concerns and the Supreme Court's specific findings in *Lucia*, the Court is skeptical that *Lucia* is even controlling as to SSA ALJs.

Plaintiff has failed to show the ALJ was improperly appointed, that her challenge was timely, and that *Lucia* is even applicable. Accordingly, the Court will not remand based on Plaintiff's Appointments Clause challenge.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED.** The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on July 1, 2019.

*[signature]*

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties